UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OPERATING ENGINEERS LOCAL 324
HEALTH CARE PLAN, et al,

    Plaintiffs,                                   Case No. 10-11256

v.                                           Honorable Nancy G. Edmunds

DALESSANDRO CONTRACTING GROUP,
LLC,

    Defendant.

_____/

**OPINION AND ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [43]**

This matter comes before the Court on Plaintiffs Operating Engineers Local 324 fringe benefit funds' motion for summary judgment. For the reasons set forth below, Plaintiffs' motion is DENIED without prejudice.

**I.    Facts**

Defendant Dalessandro Contracting Group, LLC and Plaintiffs entered into a Collective Bargaining Agreement ("CBA") that required Defendant to pay fringe benefit contributions to Plaintiffs based on actual hours worked by employees. (Pls. Mot. Summ. J. 2.) During January 2008 through December 2010 ("the audit period") many of Defendant's employees worked in excess of 40 hours per week and were paid overtime wages. (Pls. Mot. Summ. J. 2; Wayne B. Kless Aff. ¶ 9.) For certain time periods,

1

however, Defendant paid some employees for 40 hours of work per week, regardless of their actual hours.  (Pls. Mot. Summ. J. 2.)

Plaintiffs' auditor prepared an audit to calculate the amount that Defendant owed Plaintiffs, but Defendant contests the results of this audit.  (Stipulated Facts ¶ 1.)  The audit alleges that Defendant owes contributions for hours worked by certain individuals and Defendant claims Plaintiffs have been paid on behalf of those individuals (and in some cases, overpaid) already.  Wayne B. Kless, Plaintiffs' auditor, defined overtime hours as hours worked in excess of 40 hours per week.  (Kless Aff. ¶ 9.)

### A.     Michael Sanfilippo

In 2008, for a period of 47 weeks, Michael Sanfilippo worked 1838 hours for Defendant.  (Stipulated Facts ¶ 5.)  For Michael Sanfilippo's work during that 47-week period, Defendant paid 1880 hours worth of fringe benefits to Plaintiffs, in contributions equal to 40 hours per week for all 47 weeks.  (*Id.* at ¶ 6.)  The auditor determined that Michael Sanfilippo worked 252 overtime hours for which he did not receive overtime wages and Defendant did not pay fringe benefit contributions.  (Kless Aff. ¶ 10.)

### B.     Frank Rea

In 2008, for a period of 47 weeks, Frank Rea worked 1483.5 hours for Defendant.  (Stipulated Facts ¶ 8.)  For Frank Rea's work during that 47-week period, Defendant paid 1880 hours worth of fringe benefits to Plaintiffs, in contributions equal to 40 hours per week for all 47 weeks.  (*Id.* at ¶ 9.)   The auditor determined that Frank Rea worked 216 overtime hours for which he did not receive overtime wages and Defendant did not pay fringe benefit contributions.  (Kless Aff. ¶ 11.)

### C.     Mark Shusteric

In 2008, for a period of 9 weeks, Mark Shusteric worked 350 hours for Defendant. (Stipulated Facts ¶ 11.) For Mark Shusteric's work during that 9-week period, Defendant paid 360 hours worth of fringe benefits to Plaintiffs, in contributions equal to 40 hours per week for all 9 weeks. (*Id.* at ¶ 12.) The auditor determined that Michael Shusteric worked 70 overtime hours for which he did not receive overtime wages and Defendant did not pay fringe benefit contributions. (Kless Aff. ¶ 12.)

### D.     Daniel Ray

In 2008 through 2010, for a period of 149 weeks, Daniel Ray worked 6088.5 hours for Defendant. (Stipulated Facts ¶ 14.) For Ray's work during that 149-week period, Defendant paid 5960 hours worth of fringe benefits to Plaintiffs, in contributions equal to 40 hours per week for all 149 weeks. (*Id.* at ¶ 12.) The auditor determined that Ray worked 925.5 overtime hours for which he did not receive overtime wages and Defendant did not pay fringe benefit contributions. (Kless Aff. ¶ 13.)

The coverage of the CBA indicates, "This Agreement shall govern all underground construction work which any Contractor performs *in the State of Michigan* and which comes within the jurisdiction of the Union . . . ." (CBA, at 2.) Defendant alleges, but Plaintiffs did not stipulate, that Daniel Ray spent 587 of those hours working in Baltimore, Maryland and worked the remaining 5501.5 hours in Michigan. (*Id.* at ¶ 15.) Ray's Daily Reports indicate that he was working on a project named "Baltimore" and on a sheet labeled "Aqua per diems," Ray is listed as working in Baltimore. (Def. Resp. Ex. F.)

3

The auditor indicates that he included Ray's hours designated as "out of state" hours in the audit because Defendant paid contributions to Plaintiffs on behalf of Daniel Ray for straight time hours during the weeks designated as out of state weeks. (Kless Aff. ¶ 13.)

### E.     David Letts

The parties did not stipulate to the number of hours worked by David Letts. (Kless Aff. ¶ 17.)  David Letts was a project superintendent for Defendant from 2005 through April 2010 and typically had supervisory responsibilities over multiple projects at one time. (Miarka Aff. ¶¶ 29-30.)  Letts filled out attendance forms indicating that he was working eight hours per day. (*Id.* at ¶ 32.)

Defendant provided "attendance forms" for David Letts and Daniel Ray, which indicate they both worked eight hours each workday, including holidays, and match the 40-hours per week that Defendant paid Letts and Ray. (Kless Aff. at ¶ 15.)  These attendance forms for Letts are consistent with how he was being paid by Defendant and with Defendant's instructions to Letts to work only eight hours per day. (Miarka Aff. ¶ 32-33.)  Defendant understood that Letts was to be paid for 40 hours of work a week, even if he worked less than that. (Miarka Aff. ¶ 34.)

David Letts did not record his hours on Daily Reports, but he approved the Daily Reports prepared by other employees.  Daniel Ray's attendance forms directly contradict his Daily Reports, so the auditor determined that the attendance forms were not accurate representations of actual hours worked for Daniel Ray or David Letts. (Kless Aff. at ¶ 16.)  Defendant stipulated that the attendance form for Daniel Ray was inaccurate.  Plaintiffs' auditor estimated that David Letts worked 925.5 overtime hours

for which he did not receive overtime wages and Defendant did not pay fringe benefit contributions, which is the same number of overtime hours during the audit period as Daniel Ray. (*Id.* at ¶ 14-17.)

In their Reply brief, Plaintiffs concede that the audit overestimated Letts' hours because it calculated damages for Letts through December 2010 even though Defendant stopped employing Letts in April 2010. (Pls. Reply 5.) Plaintiffs submitted a revised audit that indicates Letts worked a total of 791.5 overtime hours for which he did not receive overtime wages and Defendant did not pay fringe benefit contributions. (Pls. Reply Ex. 1.)

## II.     Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be

viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kless & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III.   Analysis

Plaintiffs argue that Defendant owes Plaintiffs $62,933.23 in delinquent contributions and liquidated damages for a total of $103,001.03.[1] Defendant argues that this calculation improperly disregards the fact that Defendant already paid fringe benefit contributions pertaining to the employees at issue, including their overtime hours.

#### A.   David Letts' Hours

The auditor determined the amount of overtime hours due on behalf of David Letts by estimating that he worked the same number of hours as Daniel Ray. Defendant argues that this overstates Letts hours because some of Letts' work was not covered by the CBA and it does not take into account that Letts stopped working for Defendant in April 2010 and went on vacation when Ray worked overtime.

Under ERISA, an employer must "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such

---

[1] This lower figure reflects Plaintiffs' revised audit, attached to their reply brief. The original audit included owed contributions on behalf of David Letts for nine months when Defendant did not employ Letts.

employees." 29 U.S.C. § 1059(a)(1). An employer's failure to maintain records under ERISA shifts the burden to the employer to present evidence of the *precise* amount of work performed or evidence to negate the reasonableness of the plaintiff's evidence. *Michigan Laborers' Health Care Fund v. Grimaldi*, 30 F.3d 692, 696 (6th Cir. 1994). Where it is impossible to determine with any precision the amount of contributions due, "an employer is liable for contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed." *Id.* at 697; *see also Trs. of the Chicago Painters & Decorators Fund v. Salma Darwan*, 2004 U.S. Dist. LEXIS 11967, at *74 (N.D. Ill. June 29, 2004) (granting the funds reasonable estimate of actual hours where payroll information was unreliable). Additionally, the employer cannot complain that the damages lack the precision of measurement that would be possible had it kept records in accordance with its statutory requirement. *Grimaldi*, 30 F.3d at 697.

 Plaintiffs' auditor determined the amount of overtime hours due on behalf of David Letts by estimating that he worked the same number of hours as Daniel Ray. Like Ray's, Letts' attendance forms indicate that he worked 40 hours every week, even during holidays and times when he was on vacation. As a project superintendent, Letts was responsible for reviewing the work performed by other employees. Plaintiffs determined that because Letts reviewed work performed by employees who worked more than 40 hours per week, Letts also worked more than 40 hours per week.

 Defendant maintains that there is a question of fact as to how many hours David Letts worked during the audit period. Defendant does not claim that the attendance forms are accurate and has not offered any evidence of the precise hours that Letts

worked. Instead, Defendant merely argues that Plaintiffs' assertion that Letts worked the same hours as Daniel Ray is unreasonable.

First, Defendant argues that much of Letts' work was work that was not covered by the CBA. In *Grimaldi*, the Sixth Circuit determined that where it is impossible to determine the amount of contributions due, an employer is liable for contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed. *Id.* at 697. Even if some of Letts' work was not covered under the CBA, then, Defendant's failure to keep accurate records means that Defendant is responsible for contributions on all hours worked by Letts during the audit period, whether it would have been covered by the CBA or not.

Defendant also argues that Plaintiffs have disregarded evidence that Letts hours were different than Daniel Ray's because he went on vacation while Ray worked overtime hours and was not employed by Defendant for the last nine months of the audit period. Defendant presents evidence that Letts was on vacation in 2008 when Daniel Ray worked overtime hours and Plaintiffs' audit included these overtime hours on behalf of Letts. Plaintiffs argue that they cannot be certain of Letts' hours because Defendant failed to keep records and that Defendant's attempt to review the damages, line-by-line, to show uncertainty should not be allowed.

It was Defendant's responsibility to maintain accurate records of the hours worked by its employees. Having failed to comply with its statutory requirement to do this, Defendant cannot now complain that the damages sought by Plaintiffs lack the precision of measurement that would be possible had it kept records. Because there are no reliable records for Letts, Plaintiffs may use Ray's hours to determine the hours

that Letts worked, if that leads to a reasonable estimate of Letts' hours. Plaintiffs cannot, however, determine that Letts worked the same number of hours as Ray without taking into account the evidence of Letts' actual hours and where those hours diverge from Ray's hours.

It was not until its Reply brief that Plaintiffs acknowledged that the audit had accounted for nine months worth of contributions on behalf of Letts, during which Letts was not even employed by Defendant. Plaintiffs are entitled to contributions for a reasonable estimate of Letts' hours during the audit period and Plaintiffs may use Ray's hours to determine this amount. To the extent that there is evidence of Letts' actual hours, however, through vacation records or other documents, Plaintiffs must take that evidence into account.

The Court finds that Plaintiffs' are entitled to contributions for the entirety of Letts' hours during the audit period. The Court also finds that the audit must reflect the evidence of Letts' actual hours, where it exists, and that it is reasonable to use the hours worked by Daniel Ray as an estimate Letts' hours for time periods where evidence of Letts' actual hours is not available.

### B.   Defendant's Overpayments to Plaintiffs

Defendant argues that it already made some of the payments that Plaintiffs allege are delinquent and that Plaintiffs must properly account for and allocate the payments that they received from Defendant. ERISA provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). As

9

an exception to this prohibition, ERISA provides that "if such contribution or payment is made by an employer . . . by a mistake of fact or law . . . paragraph (1) shall not prohibit the return of such contribution or payment to the employer." 29 U.S.C. § 1103(c)(2)(A)(ii). Courts have consistently held that the statutory language "*shall not prohibit the return*" means that a credit or refund to an employer is permissible but not required. *Whitworth Bros. Storage Co. v. Cent. States, Southeast & Southwest Areas Pension Fund*, 982 F.2d 1006, 1019 (6th Cir. 1993) (holding that an employer is not entitled to a refund from funds for overpayments). Employers who pay mistaken contributions have no inherent entitlement to a refund. *Laborers Pension Trust Fund-Detroit & Vicinity v. Interior Exterior Specialists Construction Group, Inc.*, 394 F. App'x 285 (6th Cir. 2010).

In this case, Defendant's overpayments were not due to a mistake of law or fact, but to its deliberate decision to contribute an amount without regard to the hours the employees actually worked. Still, Defendant argues that equity favors crediting Defendant with the payments it has already made. An employer seeking equitable restitution must affirmatively establish that: (1) the employer paid contributions to the Funds which the employer was not obligated to pay pursuant to the collective bargaining agreement; (2) the employer requested refund of the contributions; (3) the Funds denied the refund; and (4) such refusal was arbitrary and capricious. *Interior Exterior*, 394 F. App'x at 294-95.

Defendant, however, did not bring an action for restitution under federal common law and did not present a counterclaim against Plaintiffs for a refund of overpayments. Additionally, Plaintiffs assert that Defendant has not brought its request for a refund to

Plaintiffs. Defendant has not satisfied its burden of establishing its right for a refund in this case.

Defendant argues that it does not need to satisfy the burden of establishing equitable restitution because it is not seeking a refund, but merely an offset. The reasons against granting Defendant an offset are the same as those that oppose granting it a refund. *Brown v. Health Care & Ret. Corp. of Am.*, 25 F.3d 90, 94 (2d Cir. 1994). To give Defendant an offset or credit for its overpayments would go against the plain language of 29 U.S.C. § 103(c)(1), which states that "the assets of a plan shall never inure to the benefit of any employer." Defendant is not entitled to offset its delinquent payments with overpayments from other months or years.

### C.    Monthly Contributions

Plaintiffs' auditor defined overtime hours as hours worked in excess of 40 hours per week. Any time an employee's weekly hours exceeded 40 hours, the audit calculates that Defendant made no overtime payments in connection with those hours. Defendant argues that this calculation is flawed because the CBA provides that fringe benefit contributions were due monthly, not weekly. Defendant argues that this means that Plaintiffs should calculate the required contributions on a monthly basis as opposed to a weekly basis.

The CBA, in Article IV Section 9, entitled, "TIMELY PAYMENT OF FRINGE BENEFIT PAYMENTS," provides that "contributions are due on the 15th of the month following the month worked, with an additional 15 day grace period." (CBA at 17.) This means that Defendant could make a one-time payment each month, to cover all the hours from the previous month. Defendant argues that its contributions should be compared to an

11

employee's hours for the month as a whole, not on a weekly basis. Plaintiffs argue that changing the calculation to a monthly one "harms the funds and their beneficiaries, runs afoul of the [CBA], and leads to bizarre results."

Plaintiffs here are effectively arguing that Defendant should not get credit for timely contributions because they were made with the assumption that the employee worked 40 hours a week every week of that month. Plaintiffs maintain this argument even in those instances where, in a single month, Defendant contributed the correct amount or overpaid Plaintiffs on behalf of a single employee. Defendant provides numerous examples, one of which is: In January 2008, Michael Sanfilippo worked a total of 139 hours. He worked 8.5 hours the first week, 36 hours the second week, 48.5 hours the third week, and 46 hours the fourth week. Plaintiffs, basing their overtime calculations on a weekly formula, determined that Sanfilippo worked 14.5 hours of overtime in January 2008, for which Defendant did not contribute. Defendant, assuming that Sanfilippo worked 40 hours each week, contributed for 160 hours on behalf of Sanfilippo in January 2008, even though he only worked 139 hours.

Plaintiffs claim that there are delinquent payments on behalf of Sanfilippo for January 2008 is unfounded, where Defendant contributed on Sanfilippo's behalf, for more hours than Sanfilippo worked. This Court finds that while Defendant is not entitled to offset one month's underpayments with another's overpayments, Plaintiff must properly account for Defendant's timely contributions, even if the reason those timely contributions were not deficient was serendipitous. There is no harm to Plaintiffs in considering timely contributions that Defendant made and refusing to do so would be manifestly unjust. Unlike using some overpayments to offset other delinquent

12

payments, where Defendant contributed the correct amount or more in a single month, Plaintiffs have no reason not to account for these contributions.

Plaintiffs argue that this would be improperly giving Defendant an offset or credit for overpayments. This is not the case, though. Where Defendant made a contribution in the correct amount or even made an overpayment to Plaintiffs in a single month for a single employee, it is not a credit or an offset to acknowledge those payments. Those payments are timely payments and must be accounted as such.

Based on the clear and unambiguous wording of the CBA, Defendant's contributions should be considered against the hours worked by employees for the previous month, not on a weekly basis. Despite the fact that Plaintiffs use the 40-hour workweek to determine overtime, the CBA provides that eight hours shall constitute a day's work on Monday through Friday and "where work is performed in excess of eight (8) hours on any of those days, time and one-half (1.5) the regular rate of wages shall be paid." (CBA, at 27-28.) In the OVERTIME section, the CBA states that employees shall be paid time-and-a-half for all time worked on Saturdays and twice the regular rate of wages for work on Sundays. (CBA, at 28.)

Overtime, by the terms of the CBA, is not defined on a weekly or monthly basis, but a daily one. An employee is entitled to overtime pay for time worked over eight hours on a Monday through Friday, and any time worked on a Saturday or Sunday, regardless of how many hours the employee worked that week as a whole. Additionally, the only mention of a forty-hour workweek in the CBA is in the Optional Workweek Schedule Section (i.e. 4-day workweek). There, the CBA states, "Any work

13

over ten (10) hours in a day, or forty (40) hours in a week, and all work performed on Saturday, shall be at time and one-half (1.5)." (CBA, at 29.)

Regardless of how overtime is calculated, Defendant was responsible for monthly contributions reflecting the actual hours worked in the previous month. There is no basis for Plaintiffs to change this to a weekly obligation. This Court finds that Plaintiffs' audit must calculate Defendant's owed contributions on a monthly basis and the audit must account for Defendant's timely payments made on behalf of an employee in that given month.

### D. Daniel Ray's Out-Of-State Hours

Defendant alleges that Daniel Ray spent only 5501.5 hours working in Michigan during the audit period and 587 hours in Baltimore, Maryland. Defendant attaches Ray's Daily Reports, which indicate that the project name he was working on was "Baltimore." Additionally, on a sheet labeled "Aqua per diems," Ray's location is listed as "Baltimore." It is undisputed that the CBA covers "work which any Contractor performs *in the State of Michigan* and which comes within the jurisdiction of the Union."

Plaintiffs give no explanation for why they refused to stipulate that Ray worked outside of Michigan and offered no evidence to refute Defendant's assertion or the evidence showing Ray was working in Baltimore. Plaintiffs' auditor stated that he included the out-of-state hours for Ray in the audit because Defendant paid contributions to Plaintiffs on behalf of Daniel Ray for straight time hours during the weeks designated as out of state weeks.

The CBA is clear that it covers work performed only in the state of Michigan. To the extent that any hours Daniel Ray worked in Maryland were included in Plaintiffs'

14

calculation of hours on which Defendant owes contributions, they must be removed. To the extent that Defendant made any overpayments on behalf of Ray, Defendant is not entitled to any refund or offset for the reasons stated in Section A above.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED without prejudice. Plaintiffs are entitled to delinquent payments from Defendant, but they have not submitted an audit reflecting an accurate amount due. Plaintiffs must submit another motion for summary judgment with a corrected audit, reflecting this Court's ruling, by March 23, 2012. This motion should be no more than 10 pages.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 12, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 12, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

15